**Albert Vita SCIAMA, Appellant,**

**v.**

**Albert DEL GUERCIO, District Director of Immigration and Naturalization at Los Angeles, California, Appellee.**

No. 15598.

United States Court of Appeals Ninth Circuit.

April 28, 1958.

Harry Wolpin, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Norman R. Atkins, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Albert Vita Sciama instituted this proceeding under the Administrative Procedure Act, 5 U.S.C.A. § 1009, for judicial review of an order for his deportation. Judgment was entered for defendant. Plaintiff appeals.

Appellant is an alien, a native of Egypt and a citizen of Italy. He last entered the United States on January 26, 1946, at Tacoma, Washington. At that time, he was admitted as a temporary visitor for a period of six months.[1] Appellant's visa was last extended until September 15, 1947. On November 30, 1947, he was notified that his application for a further extension had been denied. He was at that time advised that it was incumbent upon him to depart from the United States within two weeks. Sciama failed to depart within the time specified.

A warrant for his arrest was issued by the Immigration and Naturalization Service on December 22, 1947. The ground stated in the warrant was that Sciama had been found in the United States in violation of the Immigration Act of May 26, 1924, "in that, after admission as a visitor, he has remained in the United States for a longer time than permitted under said act or regulations made thereunder."[2]

A hearing on this matter was held on June 24, 1948, before an inspector of the Immigration and Naturalization Service. On October 18, 1948, proposed findings of fact and conclusions of law and a proposed order were issued. It was recommended that Sciama be held deportable for overstaying his visitor's visa, but that he be permitted the privilege of voluntary departure. Due to the pendency in Congress of private bills for the relief of Sciama (which later failed of enactment), and the fact that a decision of the Supreme Court in another case raised a question as to the legality of the June 24, 1948 hearing,[3] no further action was taken in this deportation matter for several years.

In the meantime, on October 1, 1948, Sciama applied for adjustment of immigration status under § 4 of the Displaced Persons Act of 1948, 50 U.S.C.A., Appendix, § 1953. A hearing on this application was held on October 24, 1949, before an examining officer of the Immigration and Naturalization Service. On November 22, 1949, proposed findings of fact and conclusions of law and a proposed decision were issued in this proceeding. It was recommended that Sciama be found not to be a displaced person, for the reason that he could return to Italy, Egypt, or China without fear of persecution. It was further recommended that, for the reason stated above, the application for adjustment of status be denied.

---

1. His status under this visa was that of a non-immigrant alien. See §§ 3 and 15 of the Immigration Act of May 26, 1924, as amended, 8 U.S.C. (1940 ed.), §§ 203, 215, since repealed. The comparable statutes now in effect are §§ 101(a) (15) (B) and 214(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. §§ 1101(a) (15) (B) and 1184(a).

2. See § 14 of the 1924 act, 8 U.S.C. (1940 ed.), § 214, since repealed. The comparable statute now in effect is § 241(a) (9) of the 1952 act, 8 U.S.C.A. § 1251(a) (9).

3. Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, decided on February 20, 1950. It was there held that administrative hearings in proceedings for the deportation of aliens must conform to the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. The commentary on the Immigration and Nationality Act of 1952, by Walter M. Besterman, in 8 U.S.C.A., pages 1–91, at page 49, discusses the effect of this decision upon hearings which had already been held.

Nothing further was done in the Displaced Persons Act proceeding until April 30, 1954, when the matter was reopened for further investigation and hearing. The further hearing was held on May 2, 1955, before Immigration Officer Robert L. Coffman. The opinion and recommendation of this officer was issued on May 11, 1955. Finding that, at the time Sciama entered this country on a visitor's visa, he intended to make the United States his permanent residence, Coffman concluded that such entry was unlawful. He therefore recommended that the application for adjustment status be, for that reason, denied. It is stated in the decision that it was unnecessary to examine the other issues presented.

Sciama excepted to this decision. On June 15, 1955, the regional commissioner entered an order finding the exceptions without merit, and denying the application for adjustment of status.

The deportation proceeding which was last active on October 18, 1948, when an inspector's decision was filed, came to life again on June 29, 1955. On that day, a further hearing was held before Special Inquiry Officer John B. Bartos. At this hearing, the record in the prior deportation hearing and the record in the Displaced Persons Act hearing were placed in evidence. Additional evidence was also received, and Sciama filed an application for suspension of deportation under § 244 of the 1952 act, 8 U.S.C.A. § 1254 (a) (1).

Special Inquiry Officer Bartos rendered his decision in the deportation proceeding on July 1, 1955. It was held that Sciama was subject to deportation on the ground that, after admission as a visitor, he has remained in the United States for a longer time than permitted by the statute under which he was admitted. It was further held that Sciama was not eligible for the privilege of suspension of deportation because he had not shown the required degree of hardship. The hearing officer found, however, that Sciama was fully qualified for the privilege of voluntary departure under § 244(e) of the 1952 act, 8 U.S.C.A. § 1254(e).

It was accordingly ordered that the application for suspension of deportation be denied; that appellant be granted the privilege of voluntary departure; and that if he failed to depart when and as required by the district director or other officer in charge, such privilege would be withdrawn and he would be deported.[4]

Sciama appealed to the Board of Immigration Appeals, contesting the special inquiry officer's finding that he was ineligible for suspension of deportation because the required degree of hardship had not been established. On January 31, 1956, the board entered an order sustaining the decision of the special inquiry officer.

On February 28, 1956, Sciama applied to the Immigration and Naturalization Service to reopen his case for a determination as to his eligibility for suspension of deportation under the law as it existed prior to the 1952 act.[5] He also asked that his deportation be stayed pursuant to the provisions of § 243(h) of the 1952 act, 8 U.S.C.A. § 1253(h).

The Board of Immigration Appeals, in a decision rendered on March 30, 1956,

---

4. This decision also recites the facts concerning the proceedings under the Displaced Persons Act of 1948, leading to the order of June 15, 1955, denying Sciama's application for adjustment of status. There was no attempt, however, to review or reconsider the order entered in the Displaced Persons Act proceeding.

5. Under the prior act (§ 19(c) of the act of February 5, 1917, as amended, 8 U.S.C. (1940 ed.), § 155(c)), the hardship which was required to be shown was in a lesser degree than under the 1952 act. However, it then had to be a hardship to a person other than the alien, to wit, "* * * serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien * * *" Sciama, who is divorced, has at no time made a showing that his deportation would be a hardship upon any person other than himself.

denied this application. The request for stay of deportation under § 243(h) was held to be premature. The privilege of voluntary departure previously accorded Sciama was still in effect, and the deportation provision of the order had not yet been invoked. Sciama did not thereafter voluntarily depart. A final order of deportation was therefore entered, and, on May 9, 1956, a warrant of deportation was issued.

Sciama instituted this action on May 29, 1956. He asked that the court review the administrative file, declare the order of deportation to be null and void, and restrain government officials from proceeding with his deportation until final determination of the matter.

A pretrial order was thereafter proposed on behalf of Sciama, signed by the court, and approved by counsel for both parties. In this order certain facts were agreed upon,[6] and two issues of law (but no issues of fact) were reserved for trial. The first of these issues of law was whether appellant was denied due process of law by reason of the fact that the hearing officer at the last deportation hearing was an appointee of the attorney general.

The second issue of law reserved for trial was whether there was reasonable, substantial and probative evidence to support the findings made by the special inquiry officer as a result of the deportation hearing held on June 29, 1955. These findings dealt only with the ques-

tion of deportation in view of the fact that appellant had overstayed his visitor's visa, and the associated questions of whether appellant should be granted the privilege of suspension of deportation, or the privilege of voluntary departure.

Now on appeal, with the tacit approval of the government, the only issue presented is one which was not dealt with by the trial court. This issue is whether appellant's application for adjustment of immigration status, under § 4 of the Displaced Persons Act of 1948, should not have been denied on the ground that he entered the United States unlawfully.[7] As before noted, the basis for this ground of denial was the fact that, when Sciama entered the country on a visitor's visa, he intended to make the United States his permanent residence.

If it be assumed that it is lawful for a person to enter this country under the circumstances alleged by appellant (which we do not decide), and that the circumstances concerning such entry are as alleged by appellant (which we cannot decide) it would be a manifest miscarriage of justice to let this judgment stand.[8]

The government being willing to meet this issue here on its merits, we have determined to send the case back for trial of that issue in the district court.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

6. The facts so agreed upon are set out in the second paragraph of this opinion.

7. In his brief, appellant refers to this application as one for adjustment of immigration status under § 4 of the Refugee Relief Act of 1953, 50 U.S.C.A.Appendix, § 1971b. The only section of that act which could have been applicable, however, is § 6, 50 U.S.C.A.Appendix, § 1971d. But appellant made no application under that act. His application for adjustment of immigration status was made on October 1, 1948, under § 4 of the Displaced Persons Act of 1948.

8. If appellant should prevail on this ques-

tion, there would still remain, for agency determination, the question of whether appellant was displaced as a result of events subsequent to the outbreak of World War II, and whether he cannot return to his former country because of persecution, or fear of persecution, on account of race, religion, or political opinions. See § 4(b) of the Displaced Persons Act of 1948, 50 U.S.C.A.Appendix § 1953(b). In the event the agency should rule in his favor on this point, adjustment of status would then be dependent upon adoption of a concurrent resolution of Congress. Section 4(a), supra.